# STATE OF MICHIGAN

# COURT OF APPEALS

In re BYRA/PAYNE, Minors.

UNPUBLISHED
March 2, 2017

No. 333741
Oakland Circuit Court
Family Division
LC No. 2014-821986-NA

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right from the trial court order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Petitioner, the Department of Health and Human Services (DHHS), filed an initial petition in July 2014, alleging, among other things, that respondent was currently homeless, the minor children had been living with a relative for a month, that respondent abused alcohol daily, frequently transported the children when intoxicated, used marijuana in the children's presence, and recently had been incarcerated for abusing her boyfriend. In addition, respondent had been diagnosed as bipolar, but was not taking her medication or following through with services at Catholic Social Services, and had stated in an interview the week before DHHS filed its petition that she was unstable and "ready to snap."

After a preliminary hearing, the trial court authorized the petition, placed the minor children at issue with DHHS for care and supervision, and allowed respondent supervised parenting time. At a pretrial hearing, respondent entered a plea on the petition of not responsible, and a bench trial was held on September 12, 2014. Evidence presented at the trial supported the allegations in the petition, and the court subsequently entered an order of adjudication, ordered DHHS to refer respondent for a psychological evaluation, and ordered respondent to call 24 hours in advance to confirm her attendance at supervised parenting time.

Under the initial Parent-Agency Treatment Plan (PATP), barriers to reunification included respondent's emotional instability, lack of parenting skills, poor domestic relations, substance abuse, and lack of housing and employment. Respondent agreed to attend all court hearings and maintain contact with her case manager, participate in a psychological evaluation and follow all recommendations, participate fully in mental health services, including

-1-

counseling, learn appropriate parenting skills, abstain from domestic violence, obtain housing and a legal source of income, and remain substance free. In addition, the court ordered respondent to follow the recommendations of an alcohol and substance abuse evaluation, to submit Alcoholics Anonymous and Narcotics Anonymous signature sheets as proof of attendance, to submit to drug screens at least twice a week, and to demonstrate six months of being sober before being reunited with her children.

The record shows that respondent made scant if any progress toward addressing the barriers to reunification in the months that followed. In April 2015 respondent checked herself into Grace Centers of Hope to undergo a yearlong rehabilitation program that included drug screens and counseling. Respondent appeared to do well in the structured environment of Grace Centers of Hope. Her drug screens were negative after her first month there, and she was able to participate in parenting time at the center. However, respondent became intoxicated in July 2015 and left the center for a 30-day "time out." Although respondent could have returned to the center after the 30 days were up, she did not. She did not participate in any drug screens after leaving the center. She refused to disclose where she was living after she left the center, failed to show up for scheduled parenting time, and stopped communicating with her attorney. Although respondent claimed she was participating in classes through Easter Seals and Haven, no evidence supported her claim. On January 8, 2016, petitioner filed a supplemental petition to terminate respondent's parental rights, which led to the termination of respondent's parental rights on April 26, 2016.

## II. ANALYSIS

## A. REASONABLE EFFORTS

Respondent first argues that there is insufficient evidence to support the trial court's finding that adequate services were provided to her given her combined mental health and substance abuse condition, and, thus, that her due process rights have been violated. This issue is unpreserved because respondent failed to object or indicate that the services provided to her were inadequate. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Consequently, our review is for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

"A natural parent has a fundamental liberty interest in the care, custody, and management of his child that is protected by the Fourteenth Amendment of the United States Constitution." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (quotation marks and citation omitted). In Michigan, "when a child is removed from the parents' custody, the petitioner is [generally] required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), and (4); see also *In re HRC,* 286 Mich App 444, 462; 781 NW2d 105 (2009). Reasonable efforts to reunify parents and children must be made "in all cases" except those involving aggravated circumstances that are not present here. MCL 712A.19a(2); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). When the DHHS fails to offer services or provide a reasonable opportunity for a respondent to participate in services, the result is a gap in the evidentiary record that renders termination of parental rights improper and premature. *Id.* at 152, 158-160. However, "[w]hile the DH[H]S has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part

of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. When a respondent fails to adequately participate in, and benefit from, services that are actually offered by petitioner, she is not entitled to claim that petitioner was required to provide additional services. See *id*.

In this case, respondent's claim that petitioner failed to make reasonable efforts toward reunification is unsupported by the trial court's record. After each hearing, the trial court found that DHHS had made reasonable efforts to provide services and reunify the family. The court found and the testimony showed that DHHS made referrals for drug screens and therapy, set up parenting time, and referred respondent for substance abuse treatment. Respondent did not follow through with the referrals given her. She did not submit requested drug screens or participate in services. Although she entered Grace Centers of Hope on her own initiative, she left the program approximately three months later because she did not want to be placed on "lockdown" after she became inebriated on July 4, 2015.

Respondent's limited participation in the services she initiated on her own does not undermine the court's findings regarding reasonable efforts. Respondent was welcome to pursue any services that would rehabilitate her. The goal was for her to be able to parent safely by achieving mental stability and sobriety, not for the services to have come from DHHS. Respondent relies on the testimony of evaluating psychologist, Shannon Conz, to contend that DHHS should have provided, but did not, a specialized service that combined treatment for her mental health issues and alcohol abuse. However, respondent misrepresents the testimony of Conz, who merely stressed the importance of treating respondent's mental health and alcohol abuse issues simultaneously. Contrary to respondent's claim, it was not that respondent needed any specialized services, but that both her mental health issues and alcohol abuse needed to be addressed because her untreated mental health issues made her more vulnerable to substance abuse. Respondent did not accept her responsibility to participate in the services offered, see *In re Frey*, 297 Mich App at 248, and cannot now claim that petitioner was required to provide additional or different services. Thus, respondent's claim that DHHS failed to make reasonable efforts to provide services is without merit.

## B. STATUTORY GROUNDS

Respondent next argues that petitioner failed to establish by clear and convincing evidence a statutory ground for termination. Again, we disagree.

A trial court's findings that a statutory ground for termination has been established, and that termination is in the best interests of the children, are reviewed for clear error. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). See also MCR 3.977(K). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich at 152. To be clearly erroneous, a decision must be "more than just maybe or probably wrong." *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999) (quotation marks and citation omitted); *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). See also MCR 2.613(C).

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182. Clear and convincing evidence is evidence that

"produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in an issue." [*In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995), quoting *In re Jobes*, 108 NJ 394, 407-408; 529 A2d 434 (1987).]

Under MCL 712A.19b(3)(c)(*i*), a court may terminate a parent's rights if the court finds that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time given considering the child's age."

The conditions that led to the court's exercise of temporary wardship over the children, and to respondent's adjudication, involved respondent's drug and alcohol abuse, lack of adequate housing, untreated mental health issues, and inability to provide proper care and custody of her minor children. Respondent agreed to comply with the PATP, which required her to complete drug screens, attend parenting classes, pursue psychiatric services, and attend Alcoholics Anonymous. However, at a dispositional review hearing in January 2015, the trial court found that respondent was no further along than she was when the children were removed six months earlier, and stressed that she needed to make concerted efforts at compliance with the case services plan. Although she seemed to make some progress at Grace Centers of Hope, respondent left the center and, although she could have reentered the program 30 days later, failed to do so. Respondent's DHHS foster-care worker, Kwamema Cayton, testified at the statutory grounds phase of respondent's termination hearing that he had difficulty getting in touch with respondent after she left Grace Centers for Hope because respondent would not return his calls. Cayton said that, despite his attempts to call respondent at least once a month, he had no contact with her from October 15, 2015, until after the supplemental petition was filed.

By the time of the permanent custody hearing more than a year after respondent's adjudication, respondent had not demonstrated that she had meaningfully addressed her issues or sufficiently benefited from services so that she could provide proper care of the children and keep them from harm. There was no evidence that respondent had sought psychiatric care and therapy or took her prescribed medication consistently. There was no evidence that respondent had stopped drinking or using drugs because she never completed treatment or complied with random drug screening. Respondent denied having a drinking problem and driving her children while intoxicated; she believed that housing was her biggest obstacle. Put simply, she lacked insight about her substance use, mental instability, and about how her alcohol and substance abuse exposed her children to the risk of harm. Thus, the record evidence amply supports that the conditions existing at the time of the adjudication continued to exist 182 days later.

Furthermore, we detect no reasonable likelihood that respondent's struggle with drug and alcohol abuse and mental health issues "will be rectified within a reasonable time considering the age of the children." MCL 712A.19b(3)(c)(*i*). The trial court found, and the record supports,

that respondent does not accept responsibility for her actions, nor is she willing to accept the restrictions placed on her by treatment providers or by her relatives as conditions for living with or visiting her children at their homes. The record shows that respondent starts services but fails to follow through for one reason or another, and nothing in the record indicates that this pattern is likely to change within a reasonable time.

Respondent contends that the trial court should not have found statutory grounds to terminate her parental rights because she had met the goal of obtaining housing, and the statute does not require the court to consider her likelihood of keeping it. Respondent's argument misrepresents the statutory language. The statute requires respondent to be able to provide proper care and custody of her children. Assuming arguendo that respondent obtained adequate housing before DHHS filed its termination petition, which it does not appear that she did, commendable though her accomplishment may be, it does not change the fact that the totality of the evidence supports the conclusion that respondent had made no meaningful progress in addressing her alcohol abuse and mental health issues.

In light of the foregoing, we conclude that the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*).[1]

## C. BEST INTERESTS

Finally, respondent contends that petitioner failed to prove that termination of her parental rights was in the best interests of the children. We disagree. "We review a trial court's decision regarding a child's best interests for clear error." *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013).

Once a trial court finds that a statutory ground for termination exists, it must terminate parental rights if it finds by a preponderance of the evidence that doing so is in the child's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App at 83. In deciding whether termination is in the child's best interests, the court may consider the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), the child's bond to the parent, *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004), the child's safety and well-being, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011), whether the parent can provide a permanent, safe, and stable home, *In re Frey,* 297 Mich App at 248-249, and the child's "need for permanency, stability, and finality," *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992).

As petitioner correctly points out, respondent failed to support her argument that the court erred in its best-interest finding. A respondent may not merely announce a position and leave it

---

[1] Because the continuing conditions since the adjudication bear so heavily on respondent's ability to provide proper care and custody under § 19b(3)(g), and the likelihood that the children would suffer at least emotional harm if returned to her under § 19b(3)(j), we see no need to set forth largely duplicative analyses in relation to the latter two termination factors. This is especially so given that "[o]nly one statutory ground for termination need be established." *In re Olive/Metts Minors,* 297 Mich App 35, 41; 823 NW2d 144 (2012).

to this Court to discover and rationalize the basis for the claim. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Nevertheless, upon review of the record, we conclude that the trial court did not err in finding that termination of respondent's parental rights was in the best interests of the children. It is in the best interests of these children to be raised by a caregiver who can provide them with housing, remain sober, and exhibit emotional stability. The record shows that respondent was unable to provide the safety and stability the minor children need because she was not willing to admit to and put forth sufficient effort to overcome her alcohol addiction and properly address and treat her mental health issues. Respondent demonstrated an inability or unwillingness to appreciate and respond to the children's needs by putting her own needs and negative feelings about the children's placement with relatives ahead of the children's need to visit with their mother. Although the evidence indicated that the children have a bond with respondent, such bond is outweighed in this case by the children's need for permanency, stability, and safety. Thus, the trial court did not err in its best-interest determination.

Affirmed.


/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola